# Exhibit B

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS ARMSTRONG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 07-C-6916 |
| | ) | |
| | ) | Hon. Ronald A. Guzman |
| | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| v. | ) | REMOVAL OF ACTION FROM |
| | ) | THE CIRCUIT COURT OF |
| | ) | COOK COUNTY, ILLINOIS |
| | ) | PURSUANT TO 28 U.S.C. §1441(a) |
| | ) | (DIVERSITY OF CITIZENSHIP) |
| INTERACTIVE BROKERS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## INTERACTIVE BROKERS LLC'S MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Ted S. Helwig
Dean V. Hoffman
Jeffrey E. Jamison
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe Street, Suite 1900
Chicago, Illinois 60661
(312) 902-5200

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................1

ARGUMENT..................................................................................................................2

I.   PLAINTIFFS' CLAIM FOR NEGLIGENCE, GROSS NEGLIGENCE, AND
     RECKLESS MISCONDUCT MUST BE DISMISSED........................................3

     A.   Interactive did not owe Plaintiffs a duty of care........................................3

     B.   Interactive's alleged conduct was not the proximate cause of Plaintiffs' injuries. ....5

II.  PLAINTIFFS' CLAIMS FOR NEGLIGENT, GROSSLY NEGLIGENT, AND
     RECKLESS FAILURE TO TRAIN AND SUPERVISE ITS EMPLOYEES MUST
     BE DISMISSED. ....................................................................................................7

III. PLAINTIFFS' CLAIMS FOR AIDING AND ABETTING STEELE'S
     FRAUDULENT SCHEME AND BREACH OF FIDUCIARY DUTY MUST BE
     DISMISSED ...........................................................................................................8

     A.   Plaintiffs have failed to plead Steele's fraud with the requisite particularity.............9

     B.   Plaintiffs have failed to plead sufficient facts to show that Interactive knowingly
          participated in Steele's fraud or breaches of fiduciary duty......................................10

     C.   Plaintiffs have failed to plead sufficient facts to show that Interactive substantially
          assisted Steele in carrying out his tortious conduct..................................................13

IV.  PLAINTIFFS' CLAIMS FOR ACTING IN CONCERT WITH STEELE MUST BE
     DISMISSED .........................................................................................................15

V.   COUNT V MUST BE DISMISSED BECAUSE WILLFUL AND WANTON
     CONDUCT IS NOT AN INDEPENDENT CAUSE OF ACTION. .................17

VI.  PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT MUST BE DISMISSED .......17

CONCLUSION..............................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Abrams v. City of Chicago,* 811 N.E.2d 670 (Ill. 2004) .................................................6

*Arnold v. Janssen Pharmaceutica, Inc.,* 215 F. Supp. 2d 951 (N.D. Ill. 2002)..............................7

*Aspacher v. Kretz,* No. 94 C 6741, 2000 WL 298906 (N.D. Ill. March 21, 2000).................11, 12

*Assoc. Ben. Servs. v. Caremark RX, Inc.,* 493 F.3d 841 (7th Cir. 2007) .......................................18

*Behrens v. Harrah's Illinois Corp.,* 852 N.E.2d 553 (Ill. App. Ct. 2006) .......................................3

*Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007)............................................................2, 8

*Bosco v. Serhant,* 836 F.2d 271 (7th Cir. 1987) .........................................................................10

*Cannon v. Commonwealth Edison Co.,* 621 N.E.2d, 52 (Ill. App. Ct. 1993).................................5

*Carollo v. Al Warren Oil Co., Inc.,* 820 N.E.2d 994 (Ill. App. 3d 2004) ......................................16

*CFTC v. Kevin J. Steele,* No. 05C 3130 (May 26, 2005, N.D. Ill.)................................................2

*Conley v. Gibson,* 355 U.S. 41 (1957).........................................................................................2

*Damato v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 878 F. Supp. 1156 (N.D. Ill. 1995).........11

*Doe v. GTE Corp.,* 347 F.3d 655 (7th Cir. 2003) .........................................................................3

*Dunn v. Baltimore & Ohio R. Co.,* 537 N.E.2d 738 (Ill. 1989).....................................................4

*E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773 (7th Cir. 2007) .....................................2

*Ellis v. Allstate Ins. Co.,* 479 F. Supp. 2d 782 (N.D. Ill. 2006) .....................................................9

*El-Uri v. City of Chicago,* 186 F. Supp. 2d 844 (N.D. Ill. 2002). .................................................17

*Evans v. United States Postal Service,* 428 F. Supp. 2d 802 (N.D. Ill. 2006)................................2

*Figueroa v. Evangelical Covenant Church,* 879 F.2d 1427 (7th Cir. 1989) ..................................4

*First Springfield Bank & Trust v. Galman,* 720 N.E.2d 1068 (Ill. 1999)....................................5, 6

*General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074 (7th Cir. 1997) ..............9

*Graham v. McGrath,* 363 F. Supp. 2d 1030 (S.D. Ill. 2005).........................................................4

*Graham v. Midland Mortg. Co.*, 406 F. Supp. 2d 948 (N.D. Ill. 2005)..........................17

*Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22 (2d Cir. 2000)......................................15

*Harrison v. Dean Witter*, 715 F. Supp. 1425 (N.D. Ill. 1989)..................................3, 4, 5

*Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006)...............................................8, 9, 10

*Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166 (Ill. 2000) ............................3

*Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358 (7th Cir. 1998) ....................................3

*In re Barr*, 207 B.R. 168 (N.D. Ill. 1997)........................................................................9

*Iseberg v. Gross,* No. 103332, 2007 WL 2729325 (Ill., Sept. 20, 2007)........................3

*Jackson v. South Holland Dodge, Inc.*, 726 N.E.2d 1146 (Ill. App. Ct. 2000) ..............16

*Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996).......................6, 7, 13

*Lewis v. Lead Indus. Ass'n, Inc.*, 793 N.E.2d 869 (Ill. App. Ct. 2003) .........................18

*Mach Mold Inc. v. Clover Assoc., Inc.*, 383 F. Supp. 2d 1015 (N.D. Ill. 2005) ..............6

*Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992)...............................9

*Mueller v. Cmty. Consol. School Dist. 54*, 678 N.E.2d 660 (Ill. App. Ct. 1997) ............7

*O'Hara v. Holy Cross Hosp.*, 561 N.E.2d 18 (Ill. 1990) .................................................4

*Papasan v. Allain*, 478 U.S. 265 (1986)........................................................................2

*People v. Nutall*, 728 N.E.2d 597 (Ill. App. 3d 2000) ..................................................10

*Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644 (S.D.N.Y. 1996) ...........................14

*Phillips v. Budget Rent-A-Car Systems*, Inc., 864 N.E.2d 709 (Ill. App. Ct. 2007) ......4

*Platson v. NSM, America, Inc.*, 748 N.E.2d 1278, 1284 (Ill. App. Ct. 2001). ................7

*Ramirez v. Smart Corp.*, 863 N.E.2d 800 (Ill. App. Ct. 2007) .....................................17

*Renovitch v. Kaufman*, 905 F.2d 1040 (7th Cir. 1990)............................................9, 10

*Riggs v. Schappell*, 939 F. Supp. 321 (D.N.J. 1996) .....................................................5

*Rosengard v. McDonald*, 562 N.E.2d 583, 588 (Ill. App. Ct. 1990)..............................6

*Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 129-30 (S.D.N.Y. 2002)...........5

*Sanke v. Bechina*, 576 N.E.2d 1212 (Ill. App. Ct. 1991)................................................................16

*Siegel ex rel. Latham v. J & H Marsh & McLennon, Inc.*, 159 F. Supp. 2d 1118 (N.D. Ill. 2001).2

*Simmons v. Garces*, 763 N.E.2d 720 (Ill. 2002) ............................................................................5

*Strauss v. City of Chicago*, 760 F. 2d 765 (7th Cir. 1985) ............................................................3

*Suttles v. Vogel*, 533 N.E.2d 901 (Ill. 1988) ...............................................................................18

*Thompson v. County of Cook*, 609 N.E.2d 290 (Ill. 1993) ............................................................5

*Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756 (Ill. App. 3d 2003) ..........................8, 10, 13

*Umble v. Sandy McKie and Sons, Inc.*, 690 N.E.2d 157 (Ill. App. Ct. 1998)..........................13, 15

*Van Horne v. Muller*, 705 N.E.2d 898 (Ill. 1998) ........................................................................7

*Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179 (Minn. 1999) .....................................14

*Young v. Bryco Arms*, 821 N.E.2d 1078 (Ill. 2004).......................................................................5

*Ziarko v. Soo Line RR*, 641 N.E.2d 402 (1994)...........................................................................17

**Other Authorities**

Restatement (Second) of Torts § 876(c) (1979) ......................................................................13, 16

Defendant Interactive Brokers LLC, ("Interactive" or the "Company") respectfully submits this memorandum in support of its motion to dismiss Plaintiffs' Complaint (the "Complaint"), pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This action is an ill-fated attempt to hold Interactive liable for the fraudulent and criminal actions of Plaintiffs' investment advisor, Kevin J. Steele ("Steele"). According to the Complaint, Steele concocted a fraudulent scheme designed to obtain Plaintiffs' money, took steps to conceal the scheme from everyone, including Interactive, and caused the Plaintiffs' investment losses. Plaintiffs have not, and cannot, allege that Interactive had actual knowledge of Steele's scheme. Plaintiffs have not, and cannot, allege that Interactive actively participated in Steele's scheme or that Interactive had the intent to help him achieve his goal. The fact is, Steele also defrauded Interactive. Nevertheless, in an effort to find someone to blame for their own investment decisions, Plaintiffs attempt to recover their losses from Interactive by (1) alleging a duty of care that Interactive simply did not have, (2) linking their losses to Interactive through a series of events and circumstances that are far too removed to constitute proximate cause, and (3) ascribing fraudulent knowledge and intent to Interactive though the construct of an alleged "conscious disregard" of facts. Especially based upon the Supreme Court's recent guidance on pleading standards, allegations of this type are insufficient as a matter of law. Plaintiffs will never be able to allege more. Their claims should, therefore, be dismissed.

## BACKGROUND

Interactive is an online brokerage firm headquartered in Connecticut. Interactive customers direct their own trading, place their own orders and send those orders to Interactive via the internet. Interactive does not have traditional brokers or sales persons who make recommendations to customers or take orders by telephone. In December 2002, Steele opened an individual trading account with Interactive based on a series of false representations. (*See* Compl. ¶¶ 1, 4, 16, 17.) Unbeknownst to Interactive, Steele used that account to operate an illegal commodities pool ("the Pool").

To solicit investors for the Pool, Steele entered into agreements with two other individuals, David Shannon ("Shannon") and David Fulkco ("Fulkco"). (Compl. ¶¶ 18-28.) Shannon and Fulkco collected money from investors, including Plaintiffs, to be deposited into Steele's Interactive account. (Compl. ¶¶ 29-36.) Steele, Shannon, and Fulkco took a number of

steps to conceal their fraud from Plaintiffs, including issuing false Interactive account statements and making other unspecified false representations. (Compl. ¶ 26.) Steele also took steps to deceive Interactive about the source of his investment funds, the nature of his livelihood, and his financial position to conceal the true nature of his activities. (*See* Compl. ¶¶ 16, 17.) It was not until one of Steele's investors contacted Interactive regarding his account—the only such contact Interactive received in over two years—that Steele's fraudulent scheme was exposed. (Compl. ¶ 44.) It was Interactive that reported Steele's actions to federal authorities. (Compl. ¶ 44.)

A Canadian court has convicted Steele of criminal fraud and sentenced him to prison. (Compl. ¶ 2.) In addition, the Commodities Futures Trading Commission ("CFTC") has ordered Steele to pay full restitution to the investors he defrauded. (*See* Compl. ¶¶ 132-36; *CFTC v. Kevin J. Steele*, No. 05C 3130 (May 26, 2005, N.D. Ill.).) In this action, Plaintiffs attempt to hold Interactive liable for Steele's alleged fraud. Their claims fail as a matter of law for the reasons discussed below.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007); *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). Notably, in *Twombly* the Supreme Court "retired" the standard established in *Conley v. Gibson*, that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1959 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Although the court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in plaintiff's favor," *Evans v. United States Postal Service*, 428 F. Supp. 2d 802, 805 (N.D. Ill. 2006), a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 127 S.Ct. at 1965. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Siegel ex rel. Latham v. J & H Marsh & McLennon, Inc.*, 159 F. Supp. 2d 1118, 1125 (N.D. Ill. 2001) ("[b]are legal conclusions attached to narrated facts will not suffice."); *see also Strauss v. City of Chicago*, 760 F. 2d 765, 768 (7th

Cir. 1985). Claims based in fraud are subject to an even higher standard as they must be plead with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

As established below, Plaintiffs fail to meet these pleading standards. The Complaint attempts to impose liability on Interactive by asserting a series of intentional and non-intentional torts. To demonstrate the flaws in the Complaint, the arguments below first address the non-intentional tort claims and establish that Interactive owed no duty of care to Plaintiffs. Then we argue that, especially when Interactive owed no duty of care to Plaintiffs, the Complaint fails to allege any intentional torts despite the conclusory allegations of conscious avoidance.[1]

## I.    PLAINTIFFS' CLAIM FOR NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESS MISCONDUCT MUST BE DISMISSED

In Count VI, Plaintiffs attempt to impose on Interactive a duty of care that it simply did not have and to tie their losses to Interactive through a series of events and circumstances that are far too removed to constitute proximate cause. As such, Count VI fails as a matter of law and must be dismissed.

### A.    Interactive did not owe Plaintiffs a duty of care.

To establish that Interactive owed them a duty of care, Plaintiffs must establish that they stood in such a relationship with Interactive "that the law imposed on [Interactive] an obligation of reasonable conduct for [their] benefit...." *Iseberg v. Gross,* No. 103332, 2007 WL 2729325, at *4 (Ill., Sept. 20, 2007). Where no duty exists, a cause of action in negligence does not lie. *Behrens v. Harrah's Illinois Corp.,* 852 N.E.2d 553, 555-556 (Ill. App. Ct. 2006).[2]

If one accepts the allegations of the Complaint as true, Plaintiffs were the victim of a crime committed by Steele. It is well-settled under Illinois law that, absent a special relationship between the parties, there is no "duty to control the conduct of another to prevent a criminal attack on a third party." *Hills v. Bridgeview Little League Ass'n,* 745 N.E.2d 1166, 1178 (Ill. 2000); *see also Doe v. GTE Corp.,* 347 F.3d 655, 661 (7th Cir. 2003) ("[t]he common law rarely requires people to protect strangers, or for that matter acquaintances or employees."); *Figueroa*

---

[1]  Because the Complaint's causes of action are addressed in this order, they are not addressed in the order in which they appear in the Complaint.

[2]  It bears noting at the outset that Plaintiffs do not allege that they were in contractual privity with Interactive, nor do they allege they were invitees onto Interactive's premises. Therefore, a duty did not arise on those bases. *Harrison v. Dean Witter,* 715 F. Supp. 1425, 1436 (N.D. Ill. 1989) (contract); *Howard v. Wal-Mart Stores, Inc.,* 160 F.3d 358, 359 (7th Cir. 1998) (invitee).

*v. Evangelical Covenant Church*, 879 F.2d 1427, 1430 (7th Cir. 1989). None of the established exceptions to this principle exist here: (1) carrier passenger, (2) innkeeper-guest, (3) business invitor-invitee, or (4) voluntary custodian-protectee. *Graham v. McGrath*, 363 F. Supp. 2d 1030, 1035 (S.D. Ill. 2005). Therefore, Interactive had no duty to protect Plaintiffs from the criminal conduct of Steele.

Plaintiffs' attempt to impose on Interactive a general duty of care to "the public" or "members of the public," (*see, e.g.,* Compl. ¶ 83, 86, 88, 89, 93, 179), must rejected as a matter of law. In determining whether a defendant owes a plaintiff a duty of care, courts not only consider the foreseeability of a plaintiff's injury, but, "[b]ecause hindsight makes virtually every occurrence foreseeable, the court must also consider the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *O'Hara v. Holy Cross Hosp.*, 561 N.E.2d 18, 21 (Ill. 1990). Additionally, courts "must take into account the public policy and social requirements of the time and community." *Id.* Illinois courts, considering these factors, have consistently rejected the broad proposition that defendants owe a duty of care to the general public. "We believe that the imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable burden on society." *Dunn v. Baltimore & Ohio R. Co.*, 537 N.E.2d 738, 745 (Ill. 1989); *Phillips v. Budget Rent-A-Car Systems*, Inc., 864 N.E.2d 709, 715 (Ill. App. Ct. 2007) ("We do not find such a broad duty of care to the general public to be a prudent or reasonable holding."); *Harrison v. Dean Witter*, 715 F. Supp. 1425, 1435 (N.D. Ill. 1989).

Nor did Interactive, as a brokerage firm executing trades and following the instructions of its customer (Steele), owe Plaintiffs a duty of care as Steele's customers. Illinois courts, and courts in other jurisdictions, have rejected imposing a duty where parties are situated in this manner. *Harrison v. Dean Witter*, 715 F. Supp. 1425 (N.D. Ill. 1989) is an excellent illustration. In *Harrison,* the plaintiff investor lost money in a fraudulent investment scheme executed by two employees of Dean Witter through a Dean Witter account. The two employees established a Dean Witter account in one of their names and used it to pool funds from others without disclosing the source of the funds or the fact that they were investing those funds on behalf of the plaintiff and others. *Id.* at 1427-28. Dean Witter was alleged to have either made cursory inquiries into or ignored various warning signs, such as the employees investing sums far greater than they could individually afford and the source of the funds. When the scheme finally

4

collapsed, these employees had lost more than $2,000,000 of the third parties' money and Dean Witter had received substantial commissions. *Id.* at 1435. In granting summary judgment for Dean Witter, the court expressly rejected the argument that Dean Witter had a broad duty to prevent its employees from harming the public in general. *Id.*; *see also Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 129-30, 131-32 (S.D.N.Y. 2002) (holding that clearing broker owed no fiduciary duty or duty of care to customer of introducing broker and that regulatory rules do not give rise to such where they provide no private right of action), *aff'd* 165 Fed. Appx. 892 (2d Cir. 2006); *Riggs v. Schappell*, 939 F. Supp. 321, 329-32 (D.N.J. 1996) (rejecting arguments that clearing broker owed a "broad fiduciary duty," owed a duty stemming from statutes or regulations where they provided no private right of action, and that duty arises when clearing broker violates industry custom and practice).

In this case, Steele was not even Interactive's employee—he was Interactive's customer. Therefore, the relationship between Interactive and Steele is even more removed from the relationship between Dean Witter and wrongdoers in *Harrison*. Plaintiffs' attempt to impose a duty of care on Interactive to protect the general public from the wrongdoing of Interactive's customers must be rejected as a matter of law.

### B.    Interactive's alleged conduct was not the proximate cause of Plaintiffs' injuries.

Moreover, even if Interactive owed Plaintiffs a duty of care, the Complaint should be dismissed because Interactive's actions were not the proximate cause of the Plaintiffs' losses. *Cannon v. Commonwealth Edison Co.*, 621 N.E.2d, 52, 54 (Ill. App. Ct. 1993) (proximate cause a required element of a negligence claim). A court may find proximate cause lacking as a matter of law where the facts alleged do not sufficiently demonstrate cause in fact and legal cause. *Young v. Bryco Arms*, 821 N.E.2d 1078, 1086 (Ill. 2004). Cause in fact, or actual cause, "can be established only where there is a reasonable certainty that a defendant's acts caused the injury or damage." *Simmons v. Garces*, 763 N.E.2d 720, 732 (Ill. 2002) (quotations omitted); *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1073 (Ill. 1999) (the question is "whether, absent the defendant's conduct, that injury still would have occurred."). Legal cause may be found only if the defendant's acts are "so closely tied to the plaintiff's injury that he should be held legally responsible for it." *Galman*, 720 N.E.2d at 1073. Merely furnishing a condition that could lead to injury or damage does not constitute proximate cause. *Thompson v. County of Cook*, 609 N.E.2d 290, 294 (Ill. 1993) (where "negligence does nothing more than

furnish a condition by which the injury is made possible, that negligence is not the proximate cause of injury."); *see also Mach Mold Inc. v. Clover Assoc., Inc.*, 383 F. Supp. 2d 1015, 1035 (N.D. Ill. 2005); *Galman*, 720 N.E.2d at 1071 (proximate cause not found "where a negligent act or omission does nothing more than furnish a condition which makes an injury possible, but the injury is caused by the subsequent independent act of a third person."); *Rosengard v. McDonald,* 562 N.E.2d 583, 588 (Ill. App. Ct. 1990).

Interactive's alleged negligence at most merely furnished a condition by which Steele, an independent third-party actor, caused Plaintiffs' losses. *Steele* obtained their money through fraud, *Steele* misrepresented the value of their investments, and *Steele* used their money for his own personal use. Interactive had absolutely nothing to do with that conduct. Even if Interactive was negligent in not adhering to certain rules, statutes, and directives, that negligence only provided a condition that Steele could take advantage of to do his own bidding. More fundamentally, it was *Steele's* conduct that directly caused Plaintiffs' losses, not anything Interactive did. Therefore, Interactive's alleged conduct was not the cause in fact of Plaintiffs' losses.

Nor was Interactive's alleged conduct the legal cause of the Plaintiffs' losses. To be the legal cause, the injury must be a reasonably foreseeable result. *Abrams v. City of Chicago,* 811 N.E.2d 670, 670 (Ill. 2004). Where the injury is the result of the independent decision and action of a third party to violate the law, it is not deemed a reasonably foreseeable result. *Id.* at 677; *Galman*, 720 N.E. 2d at 1073. That is precisely the case here—Steele independently decided to violate the law and took steps to do so.

In addition, Plaintiffs are attempting to tie their losses to Interactive through a series of facts and circumstances that are far, far too attenuated to constitute proximate cause. Plaintiffs' theory seems to go like this: If Interactive had investigated Steele's source of funds, investigated Steele's representations about his income, investigated Steele's representation that he was trading for himself, investigated whether Steele was "laundering" money—in other words launched an investigation into Steele, one of Interactive's customers—Interactive could have discovered that he was operating an unregistered commodity pool and shut him down, thereby preventing Plaintiffs' losses.

A similar theory in a factually similar case was rejected by a New York federal district court. In *Kolbeck v. LIT America, Inc.,* 939 F. Supp. 240 (S.D.N.Y. 1996), the plaintiffs alleged

the brokerage firm, through which the principal wrongdoer ran an unregistered commodities pool, (1) failed to diligently investigate breaches of fiduciary duties owed by the pool's operator; (2) aided and abetted those breaches through lack of diligent investigation; and (3) otherwise helped conceal the breaches. The court dismissed all claims, citing the lack of proximate cause as one basis. *Id.* at 249. The court held that the brokerage firm's failure to investigate "had little if anything to do with plaintiffs' losses," and that plaintiffs' chain of causation theory—if the firm had investigated, it would have discovered the scheme and stopped doing business with the pool operator, which would have prevented plaintiffs' losses—was "too long to constitute proximate cause." *Id.* Plaintiffs here attempt to build an even longer chain of causation, which fails as a matter of law.

Having failed to establish (1) that Interactive owed Plaintiffs a duty of care and (2) that Interactive's alleged conduct was the proximate cause of their losses, Count VI must be dismissed.

## II.    PLAINTIFFS' CLAIMS FOR NEGLIGENT, GROSSLY NEGLIGENT, AND RECKLESS FAILURE TO TRAIN AND SUPERVISE ITS EMPLOYEES MUST BE DISMISSED.

In Count VII, Plaintiffs allege that Interactive was negligent, grossly negligent and reckless in training and supervising its employees. In Illinois, "[t]here is no independent common law duty to retain, train, or supervise employees in a particular way. Thus, for an employer to be liable for negligence or misconduct in retaining, training, or supervising an employee, the employee must have committed an independently actionable wrong." *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 958 (N.D. Ill. 2002). To state such a claim, a plaintiff must set forth facts showing that (1) the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and (2) the employer's failure to safeguard the plaintiff against this particular unfitness proximately caused the plaintiff's injury. *Van Horne v. Muller*, 705 N.E.2d 898 (Ill. 1998); *Mueller v. Cmty. Consol. School Dist. 54*, 678 N.E.2d 660 (Ill. App. Ct. 1997). There must be a "tangible connection between the employee's particular unfitness for the job and the resulting harm to the plaintiff" to establish proximate cause. *Platson v. NSM, America, Inc.*, 748 N.E.2d 1278, 1284 (Ill. App. Ct. 2001).

Plaintiffs have wholly failed to plead the requisite elements for this cause of action. Plaintiffs do not allege that Interactive knew of any particular unfitness of any of its employees, nor do they allege any particular unfitness that created a danger of harm to third persons.[3] Plaintiffs have pled no facts suggesting that any of Interactive's employees committed an independently actionable wrong or that any of Interactive's employees were particularly unfit for their jobs. Plaintiffs, therefore, have failed to meet the most basic pleading and fall far short of the *Twombly* standard.

For each of these reasons, Count VII must be dismissed.

## III.  PLAINTIFFS' CLAIMS FOR AIDING AND ABETTING STEELE'S FRAUDULENT SCHEME AND BREACH OF FIDUCIARY DUTY MUST BE DISMISSED

In Counts I and II, Plaintiffs allege that Interactive aided and abetted Steele's fraudulent scheme and breaches of fiduciary duty, which are causes of action only recently recognized in Illinois.  *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 759 (Ill. App. 3d 2003) (recognizing both); *Hefferman v. Bass*, 467 F.3d 596, 600-01 (7th Cir. 2006) (same).  The *Thornwood* court set forth the following as the required elements of an aiding and abetting claim: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as a part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." 799 N.E.2d at 767; *see also Hefferman*, 467 F.3d at 601.[4]

Thus, to sufficiently plead aiding and abetting, a plaintiff must first adequately plead the primary tort. Here, Plaintiffs must first allege the fraud and breaches of fiduciary duty that Steele committed.  They have failed to allege Steele's fraud with the requisite particularity. Therefore, the court cannot assess the fraud that Interactive allegedly aided and abetted.

Additionally, Plaintiffs have failed to adequately plead the second and third elements of an aiding and abetting claim with respect to both fraud and breaches of fiduciary duty.  That is because the Complaint fails to allege sufficient facts to show that Interactive was a knowing

---

[3] Indeed, Plaintiffs state to the contrary, that "Interactive's employees are very sophisticated about financial matters." (Compl. ¶ 73.)

[4] The *Thornwood* also acknowledged that the theories of aiding and abetting and concert in action are similar.  799 N.E.2d at 767-68.  That is relevant here because Plaintiffs here have also alleged that Interactive acted in concert with Steele.  (Compl. at Counts III and IV).

participant with the intent to assist Steele in accomplishing his goal and that Interactive knowingly and substantially assisted Steele. Consequently, Plaintiffs have failed to satisfy the second and third elements of an aiding and abetting claim. Counts I and II, therefore, must be dismissed.

A. **Plaintiffs have failed to plead Steele's fraud with the requisite particularity.**

To meet the first element for aiding-and-abetting fraud, Plaintiffs must meet the heightened pleading requirements of Rule 9(b). *Hefferman*, 467 F.3d at 601. Therefore, the Complaint must allege: "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *Renovitch v. Kaufman*, 905 F.2d 1040, 1049 (7th Cir. 1990). To meet the heightened pleading standard of Rule 9(b), plaintiffs must allege detailed facts that show "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997); *Ellis v. Allstate Ins. Co.*, 479 F. Supp. 2d 782 (N.D. Ill. 2006). The Complaint "must, at a minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). "Mere conclusory allegations without a description of the underlying fraudulent conduct will not satisfy the requirements of Rule 9(b) and warrant dismissal." *In re Barr,* 207 B.R. 168, 173 (N.D. Ill. 1997) (citation omitted).

Plaintiffs here have wholly failed to allege the required elements to establish Steele's fraud, much less allege that fraud with particularity. Paragraphs 18 through 28 of the Complaint describe only in the broadest terms how Steele, Fulkco, and Shannon solicited investors, but not a single fact is alleged describing what, if any, misrepresentations were made, much less to whom they were made, when they were made, or by what means they were made. For example, the Complaint fails to identify the "who, what, when, why, and how" for the following for each of the 123 plaintiffs: (1) what Steele or others told them to induce them to invest their money, (2) what Steele or others told them about how their money was going to be invested, (3) what Steele or others told them about the risks of the investments, (4) what Steele or others told them about the status of their investments, (5) what Steele or others told them about Interactive, or (6) what

Steele or others told them about how Steele would be compensated for his services. The closest Plaintiffs come to any such allegation is contained in Paragraph 26: "Steele, Shannon, Fulkco, or his father Wally Fulkco showed the Plaintiffs and other investors false account statements with Interactive's logo that Steele had fabricated, which showed substantial returns that were false, or they made similar false representations to them." Paragraph 28 also makes a vague reference to "false representations." Vague allegations of this nature come nowhere close to satisfying the pleading standards of Rule 9(b). Without such facts, the court cannot assess the primary violation that Interactive is alleged to have aided and abetted.

Plaintiffs' failure to allege any facts describing the fraud that Steele perpetrated is not surprising because that would reveal that Interactive was entirely unaware of Steele's scheme, had absolutely no knowledge of what Steele told Plaintiffs and other investors to obtain their money, and certainly played no active role in the fraud Steele allegedly committed. The Complaint, therefore, fails to meet the first element of a claim for aiding and abetting fraud.

**B.  Plaintiffs have failed to plead sufficient facts to show that Interactive knowingly participated in Steele's fraud or breaches of fiduciary duty.**

To meet the second and third elements of an aiding and abetting claim, Plaintiffs must show that Interactive was aware of its role in the tortious conduct at the time and that Interactive knowingly and substantially assisted Steele. *Thornwood*, 799 N.E.2d at 767; *see also Hefferman*, 467 F.3d at 601. Here, Plaintiffs must, therefore, allege facts to show that Interactive (1) knew Steele was committing fraud and breaching fiduciary duties and (2) actively participated with and substantially assisted Steele with the intent to help him achieve his goal. *See, e.g., People v. Nutall*, 728 N.E.2d 597, 632-33 (Ill. App. 3d 2000) (knowledge that a violation is occurring is insufficient to impose aider and abettor liability; defendant must have had intent to promote or facilitate the violation); *see also Renovitch*, 905 F.2d at 1047 (affirming dismissal where plaintiffs lacked evidence that the defendants "knowingly participated in a scheme to defraud," and holding that plaintiff must show that the defendant has "thrown in his lot with the primary violators.") (citation omitted); *Bosco v. Serhant*, 836 F.2d 271, 279 (7th Cir. 1987) (under federal criminal law, "[a]iding and abetting...requires not only knowledge of the principal's objective but a desire to help him attain it" and rejecting argument that "civil aiding and abetting requires less proof of participation in the principal's scheme") (citations omitted). With respect to allegations of fraud, Plaintiffs must meet the heightened pleading requirements of Rule 9(b).

Two Illinois cases involving facts similar to this one are instructive and demonstrate that Plaintiffs have failed to allege that Interactive was a knowing participant in a fraudulent scheme or breach of fiduciary duty.[5]   In *Damato v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 878 F. Supp. 1156 (N.D. Ill. 1995), the plaintiffs invested money in a commodity pool that was operated like a classic Ponzi scheme by one of the defendants.   Merrill Lynch was alleged to have facilitated the scheme "by knowingly accepting third party checks for deposit…in violation of Merrill Lynch's internal rules and policies; knowingly sending its customers to [the defendant] without advising them of the reasons for his termination from Merrill Lynch; and knowingly permitting [the defendant's companies] to act as an unregistered futures commission merchant and [defendant] as an unregistered commodity pool operator and commodity trading advisor." *Id.* at 1158, 1161-62.   Similar allegations were stated against another defendant, First Commercial Financial Group, Inc.   *See id.*   The *Damato* plaintiffs alleged that without Merrill Lynch's and First Commercial's assistance, the pool operator "would not have been able to perpetrate his fraudulent scheme and plaintiffs would not have lost their investment funds." *Id.* at 1158-59.   The court dismissed the claims against Merrill Lynch and First Commercial holding that the facts alleged "[did] not in any way suggest that these…defendants agreed to perpetrate a fraud against plaintiffs" and that the plaintiffs had "fail[ed] to allege any facts indicating that these…defendants even knew about [the Ponzi scheme operator's] alleged fraudulent scheme, let alone that [they] intended to defraud the plaintiffs by failing to check [the Ponzi scheme operator's] registration." *Id.* at 1162.   Judge Holderman also held that the allegations "at most" suggested that Merrill Lynch and First Commercial were negligent and that "[a]llegations of negligent conduct are…insufficient to support a fraud claim." *Id.*[6]

A similar conclusion resulted in *Aspacher v. Kretz*, No. 94 C 6741, 2000 WL 298906 (N.D. Ill. March 21, 2000).   In *Aspacher*, German citizens invested funds with defendant Kretz and his companies; Kretz operated the unregistered commodity pool as a classic Ponzi scheme. *Id.* at *2.   The investors' money was collected by other defendants and then sent by wire transfer

---

[5] These cases do not explicitly address the issue of conscious disregard, and were decided before aiding and abetting tortious conduct was an independent cause of action.  However, in both cases the plaintiffs attempted to show that the defendant brokerage firm was a knowing participant in a fraud by virtue of knowing certain facts.  Both courts found the facts insufficient to support a fraud claim.

[6] The plaintiffs were unsuccessful in their attempt to amend their complaint – it too was dismissed as to Merrill Lynch and First Commercial. *Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 94 C 3143, 1996 WL 164312 (N.D. Ill. April 1, 1996).

to accounts at Rosenthal Collins Group ("RCG"), a futures commission merchant and member of various futures exchanges, which cleared the trades submitted by Kretz. *Id.* at \*2-3. Kretz caused false account statements to be sent to the plaintiffs; RCG had no role in that conduct. *See id.* No one employed by RCG made any misrepresentations to the plaintiffs. *Id.* at \*4. Plaintiffs alleged RCG knew Kretz was operating an illegal pool and was on notice that "something was wrong" based on the pattern of deposits into Kretz's accounts, the commingling of accounts, and the large losses that were seen. *Id.* at \*5. Plaintiffs asserted that RCG was liable for the fraud because it accepted its fruits. *Id.* at \*5. The court granted RCG's motion for summary judgment finding that plaintiffs had "presented no evidence that RCG knew, or even had reason to know, that the funds in the 'pool account' were obtained through deception," and that there was "no evidence of RCG's knowledge of the underlying Ponzi scheme...." *Id.* at \*6. In addition, the court held that the "simple failure to supervise, without more, amounts to negligence, not fraud." *Id.* at \*6.

The facts alleged by Plaintiffs here are very similar to those in *Damato* and *Aspacher*. Interactive is not alleged to have had any knowledge of or any interaction whatsoever with Plaintiffs.[7] Interactive is not alleged to have had any knowledge of or interaction with Shannon or Fulkco, the individuals Steele recruited to assist in soliciting investors. Interactive is not alleged to have known that the Plaintiffs' funds were obtained through deception (if in fact they were). Interactive is not alleged to have known about the fabricated Interactive statements that were issued to investors, much less to have played any role in creating or disseminating them. Interactive is not alleged to have known about or participated in other misrepresentations that were made to investors (which the Complaint provides no particular detail on).

To be sure, *if* Plaintiff knew of such facts, they would have plead them. Plaintiffs can *never* allege facts of this nature because Interactive did not participate in any way with Steele and Interactive never had any actual knowledge of the scheme until it unraveled. To fill that gaping hole, Plaintiffs rely on conclusory allegations that Interactive consciously disregarded certain facts and "red flags" to establish Interactive's knowledge. Plaintiffs' place much weight on the fact that Interactive knew the money deposited into Steele's account was not his. However, Plaintiffs allege no facts establishing that Interactive had any such direct knowledge.

---

[7] In fact, the one and only interaction that Interactive had with one of Steele's investors is what caused Interactive to report Steele to the federal authorities.

Rather, the Complaint is chock full of nothing but bald, conclusory statements to that effect. Plaintiffs' only allege that Interactive "knew" this because Interactive accepted deposits into Steele's account from third parties and the amount deposited was inconsistent with Steele's stated occupation and net worth. That is insufficient, just as it was in *Damato*. This is especially true here where Plaintiffs have wholly failed to state any other facts establishing that Interactive knew anything about Steele's scheme. Plaintiffs will never, therefore, be able to establish that Interactive was aware of its role or that it knowingly and substantially assisted Steele. This is fatal to their claim and it must, therefore, be dismissed.

**C.    Plaintiffs have failed to plead sufficient facts to show that Interactive substantially assisted Steele in carrying out his tortious conduct.**

Plaintiffs also have failed to plead facts sufficient to show that Interactive substantially assisted Steele, the third element required to establish aiding and abetting liability. "One provides substantial assistance if he 'affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables it to proceed.'" *Kolbeck*, 939 F. Supp. at 247 (*quoting Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992). A failure to act, however, only constitutes substantial assistance when the alleged aider and abettor had an independent duty to act on behalf of the defrauded victim. *Id.* (citations omitted). "That is, inaction, or a failure to investigate, constitutes actionable participation only when a defendant owes a fiduciary duty directly to the plaintiff; that the primary violator owes a fiduciary duty to the plaintiff is not enough." *Id.* (*citing* W. Page Keeton *et al.*, *Prosser & Keeton on the Law of Torts* § 46 at 323-24 (5th ed. 1984)). This is consistent with Section 876(c) of the Restatement (Second) of Torts, which is followed by Illinois courts in defining "acting in concert" liability and was referenced by the *Thornwood* court when it defined the elements of aiding and abetting liability in Illinois. *See Thornwood*, 799 N.E.2d at 767-68. §

Section 876(c) provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he...(c) gives substantial assistance to the other in accomplishing the tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." That in turn is consistent with the prevailing view amongst Illinois courts that, to have given substantial assistance to the principal actor, the alleged aider and abettor's conduct must have been inherently wrongful or they must have actively encouraged the principal actor to engage in the wrongful conduct. *See Umble v. Sandy McKie and Sons, Inc.*, 690 N.E.2d 157, 159 (Ill. App. Ct. 1998) (substantial assistance not found where auto repair

shop's conduct was not inherently wrongful and shop did not actively encourage wrongful behavior).

Because a civil cause of action for aiding and abetting has only recently been recognized, what constitutes substantial assistance in a context such as the one presented here is not well-developed. Courts in other jurisdictions addressing this question in cases involving fraud and breach of fiduciary duty have held that it "means something more than provision of routine professional services." *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 188-89 (Minn. 1999) (citing cases) (routine accounting services provided by alleged aider and abettor insufficient because, if it were, "it would be the rare accountant indeed who would not be subject to automatic liability merely because his client happened to be a tortfeasor"). Similarly, "assistance is less likely to be deemed substantial if the defendant was motivated by a lawful goal, such as the generation of commissions, independent of that which motivated the primary wrongdoer." *Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 671-72 (S.D.N.Y. 1996) (citation omitted). "Instead of harboring such lawful motivations, it is necessary that a defendant in some sort associate himself with the [tortious] venture, that he participate in it as something that he wished to bring about, that he seek by his action to make it succeed." *Id.* (citation and internal quotation marks omitted).

Plaintiffs here have alleged no facts even suggesting that Interactive took active steps to conceal Steele's conduct or assist him in committing his fraud or his breaches of fiduciary duty. Indeed, Plaintiffs have alleged no facts demonstrating that Interactive had any actual knowledge of Steele's conduct toward his investors. Plaintiffs place much weight on Interactive's alleged failure to investigate or alleged conscious disregard of various facts, such as the source of Steele's funds and the nature of Steele's livelihood. Allegations of inaction, however, fail to establish substantial assistance by Interactive because Interactive owed no independent duty to Plaintiffs, as established above.

What is more, the facts alleged by Plaintiffs actually establish that Steele also perpetrated a fraud upon Interactive. Steele lied to Interactive when he opened his individual account at Interactive. (Compl. ¶ 4.) Steele lied to Interactive when he said he would be executing trades only for himself. *Id.* Steele lied to Interactive about his net worth. *Id.* Steele lied to Interactive about his livelihood. (*See* Compl. ¶ 16, 46, 56.)

Further, the actions taken by Interactive that Plaintiffs characterize as problematic in one way or another were not at all inherently wrongful. It was not inherently wrongful for Interactive to deposit wire transfers from third parties into Steele's Interactive account. It was not inherently unlawful for Interactive to execute trades directed by Steele, even if they were risky or speculative. It was not inherently unlawful for Interactive to transfer funds from Steele's Interactive account to other accounts held by Steele. Nor are any of these activities inherently a "red flag." Investors regularly have funds transferred in and out of their accounts. Investors regularly make trades, including risky and/or speculative ones. Similarly, many investors experience losses, sometimes significant losses. "The simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 29 (2d Cir. 2000). This is especially true where, as here, Plaintiffs have failed to allege any facts showing Interactive had the requisite intent.

Having failed to establish that Interactive knowing and substantially assisted Steele, Counts I and II should be dismissed.

## IV.    PLAINTIFFS' CLAIMS FOR ACTING IN CONCERT WITH STEELE MUST BE DISMISSED

In Counts III and IV, Plaintiffs allege that Interactive acted in concert with Steele in carrying out his fraudulent scheme and breaching his fiduciary duties that he owed to Plaintiffs. These claims fail as a matter of law because Plaintiffs have failed to allege facts sufficient to establish any of the three grounds upon which Interactive could be found liable under such a theory.

Illinois courts follow the Restatement (Second) of Torts § 876 in defining what is required to state a cause of action for acting in concert. *See Umble,* 294 Ill. App. 3d at 451. That section provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

Plaintiffs have not, and cannot, allege that Interactive can be liable under § 876(a). That requires Plaintiffs to allege facts showing that Interactive and Steele agreed to conspire and "cooperate in a line of conduct or to accomplish a particular result." Restatement, Comment on Clause (a); *see also* Comment on Clause (b) (rule applicable to "common design or plan for cooperation" which is akin to conspiracy). Plaintiffs do not, and cannot, allege such facts. To the extent that their bald allegation that "Interactive intentionally and knowingly acted in concert with Steele," (Compl. ¶ 166), is an attempt to state a claim for liability under this subsection, it must be rejected as a matter of law. There is not a shred of factual support in the Complaint to establish that Interactive conspired with Steele or entered into any agreement to cooperate or carry out a common design.

Plaintiffs also have failed to allege sufficient facts to establish that Interactive could be held liable under § 876(b). Liability under this section requires Plaintiffs to show that Interactive actively encouraged Steele to act tortiously or knew that Steele was perpetrating a fraud or breaching fiduciary duties and took action to assist him. *Carollo v. Al Warren Oil Co., Inc.*, 820 N.E.2d 994, 1009-10 (Ill. App. 3d 2004) (theory failed where plaintiffs offered no evidence that "either defendant knew that the other's conduct constituted a breach of duty" or any evidence "that the two defendants, knowing of each others' wrongdoing, undertook to participate therein"); *Jackson v. South Holland Dodge, Inc.*, 726 N.E.2d 1146 (Ill. App. Ct. 2000) (no liability found where plaintiff set forth no allegations that defendant "actively and directly participated in misrepresenting facts to the plaintiffs"); *Sanke v. Bechina*, 576 N.E.2d 1212 (Ill. App. Ct. 1991) (concert of action stated where the passenger encouraged the driver's reckless operation of the vehicle).

First, Plaintiffs have not, and cannot, allege any facts showing that Interactive gave Steele any encouragement to perpetrate a fraud or to breach any fiduciary duties he owed to Plaintiffs. Indeed, their failure to allege any facts establishing that Interactive had the requisite intent to assist Steele highlights this. Second, as discussed in detail above, Plaintiffs have failed to plead facts sufficient to show that Interactive had actual knowledge that Steele was perpetrating the alleged fraud or was breaching any fiduciary duties. Finally, again as discussed above, Plaintiffs have failed to show that Interactive substantially assisted Steele.

Although it is difficult to tell from the Complaint, Plaintiffs seem to base their claim on § 876(c): "In addition, [Interactive's] own acts and omissions, when considered separately,

16

constitute repeated breaches of the duties it owed the Plaintiffs." (Compl. ¶ 167, 171.) As an initial matter, Plaintiffs' failure to establish that Interactive substantially assisted Steele is fatal to their claim under this theory. However, this theory suffers from a more fundamental and fatal flaw: Interactive did not owe Plaintiffs any legal duties. This is discussed above where Plaintiffs' negligence claims are addressed. Moreover, liability under this subsection would have to be premised upon Interactive participating in causing the result of Steele's tortious conduct "in accordance with an agreement with" Steele. Restatement, Comment on Clause (c). As stated earlier, not a single fact supports an allegation that Steele and Interactive had an agreement to this effect.

## V.    COUNT V MUST BE DISMISSED BECAUSE WILLFUL AND WANTON CONDUCT IS NOT AN INDEPENDENT CAUSE OF ACTION.

In Count V, styled "Willful and Wanton Misconduct," Plaintiffs allege that "Interactive's acts and omissions were willful and wanton and were committed with utter indifference to and in conscious and reckless disregard for the Plaintiffs' welfare." (Compl. ¶ 174.) This claim must be dismissed because it is well-settled that no such cause of action exists under Illinois law. *Ziarko v. Soo Line RR*, 641 N.E.2d 402, 406 (1994). An allegation that a defendant's conduct was willful and wanton is "an element of a cause of action, not a cause of action on its own." *El-Uri v. City of Chicago*, 186 F. Supp. 2d 844, 850 (N.D. Ill. 2002). Plaintiffs here have alleged "willful and wanton" as a separate cause of action, not as an element of one of their other claims. Count V must, therefore, be dismissed as a matter of law.

## VI.    PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT MUST BE DISMISSED

In Count VIII Plaintiffs allege that Interactive was unjustly enriched warranting the imposition of a constructive trust on the commissions Interactive deducted from Steele's account. To state a claim for unjust enrichment, a plaintiff must allege (1) the defendant retained a benefit, (2) the retention of the benefit was to the detriment of the plaintiff, and (3) the fundamental principles of justice, equity and good conscience dictate that the defendant release the benefit to the plaintiff. *Graham v. Midland Mortg. Co.*, 406 F. Supp. 2d 948, 952 (N.D. Ill. 2005); *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 813 (Ill. App. Ct. 2007).

Illinois law recognizes a claim for unjust enrichment where a benefit was transferred to a defendant by a third party in three situations: (1) the benefit should have been given to the

plaintiff, but the third party mistakenly gave it to the defendant, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant. *Assoc. Ben. Servs. v. Caremark RX, Inc.*, 493 F.3d 841, 854 (7th Cir. 2007).

Here, Plaintiffs do not allege that the commissions paid to Interactive were paid by mistake. Plaintiffs' conclusory allegation that Interactive's conduct was "wrongful," (Compl. ¶ 187), is not sufficient. Indeed, it was not wrongful for Interactive to execute trades submitted by its customer (Steele) and to charge commissions on those trades. Similarly, Plaintiffs' conclusory allegation that they "have a greater right to these commissions" is insufficient to state a claim under *Twombly*.

Additionally, "in order for a cause of action for unjust enrichment to exist, there must be some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Lewis v. Lead Indus. Ass'n, Inc.*, 793 N.E.2d 869, 877 (Ill. App. Ct. 2003). As established above, Interactive did not owe Plaintiffs a duty of care.

Finally, Plaintiffs request that a constructive trust be imposed must be rejected. A constructive trust may be "created when a court declares a party in possession of wrongfully acquired property as the constructive trust of that property." *Suttles v. Vogel*, 533 N.E.2d 901, 904-905 (Ill. 1988). No constructive trust will be imposed, however, "unless the complaint makes specific allegations of wrongdoing such as fraud, breach of fiduciary duty, duress, coercion or mistake." *Id.* (citations omitted). Moreover, for a trust to be imposed, "the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to but one conclusion." *Id.* In this case, where Plaintiffs have failed to sufficiently allege that they are entitled to relief based on a claim of unjust enrichment, a constructive trust should not be imposed. Indeed, given that the commissions were obtained by executing trades that the Plaintiffs were generally aware of, the facts in the Compliant are neither clear, convincing, strong or unequivocal and, as such, militate against imposing a constructive trust.

## CONCLUSION

For all of the above reasons, Interactive respectfully requests that the Court grant Interactive's Motion to Dismiss.

**Dated:** January 11, 2008.

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:    /s/Ted S. Helwig_____
        Counsel for Defendant Interactive Brokers LLC

        Ted S. Helwig
        Dean V. Hoffman
        Jeffrey E. Jamison
        **KATTEN MUCHIN ROSENMAN LLP**
        525 West Monroe Street
        Chicago, Illinois 60661
        (312) 902-5200
        (312) 902-1061 (fax)