# United States District Court, Northern District of Illinois

| **Name of Assigned Judge or Magistrate Judge** | Ronald A. Guzman | **Sitting Judge if Other than Assigned Judge** | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 6916 | **DATE** | 5/7/2008 |
| **CASE TITLE** | Thomas Armstrong, et al., vs. Interactive Brokers, LLC | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this Order, the Court grants defendant's motion to dismiss [doc. no. 11] and dismisses Counts One, Two, Three, Four and Eight without prejudice and Counts Five, Six and Seven with prejudice. Plaintiffs have fourteen days from the date of this Order to file an amended complaint that comports with this Order. If plaintiffs fail to do so in that time, the Court will dismiss the former group of claims with prejudice.

Docketing to mail notices.

| | Courtroom Deputy Initials: | LC/LM |
|---|---|---|

In December 2002, Kevin J. Steele opened an individual trading account with defendant. (Compl. ¶ 15.) When he did so, Steele told defendant that he was a self-employed trader with a liquid net worth of $175,000.00 and would be trading futures contracts only for himself. (*Id.* ¶¶ 16-17.)

Shortly thereafter, however, Steele began to operate an unregistered commodity pool through that account, and he and his cohorts induced the 123 plaintiffs and others to invest in the pool by making various false statements about the rate of return they could expect. (*Id.* ¶¶ 18-26.) In reality, of course, Steele was not making money but losing millions of dollars on speculative trades. (*Id.* ¶ 27.)

In May 2005, Steele's scheme fell apart when one of the investors called defendant to discuss his account and was told that defendant had no account in his name. (*Id.* ¶¶ 127-28.) Steele was subsequently arrested but only a fraction of the money he bilked from plaintiffs has been recovered. (*Id.* ¶¶ 132-43.)

Plaintiffs contend that defendant is liable for their losses because it aided and abetted Steele's tortious activity and was negligent and unjustly enriched. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss all of the claims plaintiffs assert against it.

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiffs' favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiffs must make sufficient "[f]actual allegations . . . to raise [their] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quotation omitted).

In Counts One and Two, plaintiffs allege that defendant is liable for aiding and abetting Steele's fraud and breaches of fiduciary duty. To state aiding and abetting claims, plaintiffs must allege that Steele defrauded plaintiffs and breached fiduciary duties he owed to them, defendant helped Steele to do so and was aware that it was playing a part in his tortious activity, and defendant "knowingly and substantially assist[ed]" Steele in his tortious acts. *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. Ct. 2003).

Defendant says these counts must be dismissed because plaintiffs have not alleged the underlying fraud with the particularity required by Rule 9(b). The Court agrees. Contrary to plaintiff's contention, Rule 9(b) applies to the fraud allegations of an aiding and abetting fraud claim. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) ("To the extent . . . the claim is that Bass aided and abetted St. Pierre in committing fraud, however, the[] . . . higher pleading standard . . . . [of] Federal Rule of Civil Procedure 9(b) [applies] . . . ."). To satisfy that Rule, plaintiffs must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to [them]." *Id.* (quotations omitted). The only allegations plaintiffs make with respect to Steele's fraud are that: (1) he formed partnerships with David Shannon and David Fulkco, respectively, in which the latter agreed to solicit investors for Steele's commodity pool (Compl. ¶¶ 18-23); (2) together, Shannon and Fulkco solicited more than 200 hundred investors for Steele's pool (*id.* ¶¶ 19, 22); and that (3) "Steele, Shannon, Fulkco, or his father Wally Fulkco showed the Plaintiffs and other investors false account statements with [defendant's] logo that Steele had fabricated, which showed substantial returns that were false, or they made similar false representations to them" (*id.* ¶ 26). Plaintiffs' failure to allege specifically what misrepresentations were made to each of them, when and by whom is fatal to Counts One and Two.[1]

---

[1] Plaintiffs have, however, satisfied the second and third elements of these claims by alleging that defendant credited Steele's account for, and executed trades with, money it knew was not his, and ignored the red flags on his account, like the inconsistency between his stated net worth and the level of trading in his account, so it could receive lucrative commissions. (Compl. ¶¶ 17, 35-40, 43-44, 49, 51-62, 75.) Those allegations are sufficient to satisfy the knowledge and participation elements of Counts One and Two. *See* Fed. R. Civ. P. 9(b) (stating that knowledge "may be alleged generally"); *E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 624 (7th Cir. 2000) ("[If] Refco knew that Zahid was acting without authority in making these huge speculative trades and . . . it turned a blind eye because huge trades generate huge

Plaintiff seeks to withdraw Counts Three and Four (Pls.' Mem. Opp'n Def.'s Mot. Dismiss at 11-12), and the Court, therefore, dismisses them.

In Count Five, plaintiffs allege that defendant is liable for wilful & wanton misconduct. (Compl. ¶ 174.) Defendant says there is no such claim, and plaintiffs agree. (Pls.' Mem. Opp'n Defs' Mot. Dismiss at 14.) Count Five is, therefore, dismissed.[2]

In Count Six, plaintiffs allege that defendant was negligent because it "failed to exercise reasonable care to avoid injuring members of the public . . . while conducting its business." (Compl. ¶ 178.) Plaintiffs have a viable negligence claim only if defendant owed them a duty. *See Washington v. City of Chi.*, 720 N.E.2d 1030, 1032 (Ill. 1999) ("Unless a duty is owed, there is no negligence." (alteration and quotation omitted)). Whether defendant had such a duty is a question of law. *Id.*

As a general matter, one has no duty to protect others from the criminal acts of third parties. *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 885 (7th Cir. 1992). Nonetheless, such a duty has been found to exist if "the criminal [act] was reasonably foreseeable and the parties had a special relationship: (1) carrier-passenger, (2) innkeeper-guest, (3) business invitor-invitee, or (4) voluntary custodian-protectee." *Id.* (quotation omitted); *see Heldt v. Brei*, 455 N.E.2d 842, 845, (Ill. App. Ct. 1983) ("Absent . . . a [special] relationship, a member of the general public has no duty to protect another person from the misconduct of third parties.")

Plaintiffs do not allege that they have with defendant any of the special relationships recognized by the Illinois courts. In fact, they do not allege that they had any relationship at all with defendant. Rather, they say that they were customers of Steele, the perpetrator of the illegal acts, and that Steele was a customer of defendant. (Compl. ¶¶ 10, 15, 18-28.)

Despite their tenuous link to defendant, plaintiffs contend that general tort principles dictate that a duty be imposed on defendant in this situation. Those principles direct the Court to determine whether a duty exists by considering: "(1) whether the occurrence or accident was foreseeable; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against that injury from occurring; and (4) the consequences of placing that burden upon the defendant." *Salvi v. Montgomery Ward & Co.,* 489 N.E.2d 394, 402 (Ill. App. Ct. 1986). Because it was foreseeable that one of defendant's customers would use his account to violate the commodity laws and likely that investors would thereby be hurt, plaintiffs say imposing a duty on defendant is appropriate. The Court disagrees. As the district court in *Harrison*, a case quite similar to this one, noted:

> In cases where it is alleged that one person failed to prevent a third person from doing harm to another, the last two factors [of the duty analysis] usually take precedence over the first two. That is, while wrongdoing may be foreseeable, and injury likely, the law generally imposes no duty to prevent such harm because the burden on the defendant of imposing such a duty outweighs the benefits of doing so.

*Harrison v. Dean Witter Reynolds, Inc.*,715 F. Supp. 1425, 1435 (N.D. Ill. 1989), *rev'd in part on other grounds*, 974 F.2d 873 (7th Cir. 1992).

Such is the case here. The burden of requiring defendant to protect the entire investing public from the illegal acts of one of its customers far outweighs the benefits that might result from imposing that duty. Because defendant did not have a duty to plaintiffs, it cannot be liable for breaching that duty. Plaintiffs' Count Six negligence claim is, therefore, dismissed.

Plaintiff's Count Seven claim for defendant's alleged negligent training and supervision of its employees

---

commissions[,] . . . . Refco was guilty of participating in Zahid's fraud."); *In re Lake States Commodities, Inc.*, 936 F. Supp. 1461, 1478 (N.D. Ill. 1996) (allegations that futures commission merchant received "substantially increased commissions by virtue of [illegal commodity pool operator's] scheme" were sufficient to satisfy knowing participation and substantial assistance elements), *abrogated on other grounds*, *Damato v. Hermanson*, 153 F.3d 464 (7th Cir. 1998).

[2]If plaintiffs wish to add these allegations to Counts One and Two when they file their amended complaint, they are free to do so.

suffers the same fate. "[A]n employer is liable for hiring and retaining [an] unfit and incompetent employee[]" if the employee commits an intentional tort or criminal conduct. *Martin v. Yellow Cab Co.*, 567 N.E.2d 461, 466 (Ill. App. Ct. 1990). Assuming, *arguendo*, defendant's employees engaged in such conduct, a negligent supervision claim would still be viable only if defendant owed a duty to plaintiffs. *See Harrison*, 974 F.2d at 884 (stating that improper training claim "is a negligence tort; thus, the plaintiff's allegations must establish [among other things] . . . the existence of a duty of care owed by the defendant to the plaintiff" (quotation omitted)).

Plaintiffs contend that such a duty arises from Rule 166.3 of the Commodity Future Trading Commission ("CFTC"), which provides:

> Each Commission registrant . . . must diligently supervise the handling by its partners, officers, employees and agents . . . of all commodity interest accounts carried, operated, advised or introduced by the registrant and all other activities of its partners, officers, employees and agents . . . relating to its business as a Commission registrant.

17 C.F.R. § 166.3. Unfortunately for plaintiffs, courts have repeatedly rejected the notion that rules and regulations pertaining to stock and futures transactions give rise to private rights of action or duties actionable in tort. *See Commodity Futures Trading Comm'n v. Carnegie Trading Group, Ltd.*, 450 F. Supp. 2d 788, 805 (N.D. Ohio 2006) ("However, Rule 166.3 does not create a private right of action or impose a general duty to police the trading in every account carried by a brokerage firm."); *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 129-32 (S.D.N.Y. 2002) (stating that stock exchange rules do not create any duty actionable in tort between a clearing broker and the customers of the firms that represent them), *aff'd*, 165 Fed. Appx. 892 (2d Cir. 2006); *Khalid Bin Alwaleed Found. v. E.F. Hutton & Co., Inc.*, 709 F. Supp. 815, 818 (N.D. Ill. 1989) (holding that CFTC Rule 166.3 does not give rise to a private cause of action); *Fustok v. Conticommodity Servs., Inc.*, 618 F. Supp. 1069, 1074 (S.D.N.Y. 1985) (same); *Unity House, Inc. v. First Comm. Fin. Group*, No. 06 C 1716, 1997 WL 701345, at *4 (N.D. Ill. Nov. 5, 1997) ("[T]his court . . . conclude[s] that the CFTC and NFA rules do not provide causes of actions and cannot be the basis for the legal duty necessary for this negligence claim to proceed."), *abrogated in part on other grounds*, *Damato*, 153 F.3d 464. The Court agrees with the reasoning of these cases and holds that plaintiffs cannot base a negligence claim on defendant's alleged violation of CFTC Rule 166.3. Count Seven is, therefore, dismissed.

In Count Eight, plaintiffs assert a claim for unjust enrichment and ask the Court to impose a constructive trust on the commissions defendant received from Steele's trades. To state a claim for unjust enrichment, plaintiffs must allege that defendant retained a benefit to their detriment, and fundamental principles of justice and equity – for example, defendant obtained the benefit through wrongful conduct, dictate that defendant relinquish the benefit to plaintiff. *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 854 (7th Cir. 2007); *Graham v. Midland Mortgage Co.*, 406 F. Supp. 2d 948, 952 (N.D. Ill. 2005). Moreover, a constructive trust will be imposed only when "the complaint makes specific allegations of wrongdoing such as fraud, breach of fiduciary duty, duress, coercion or mistake." *Suttles v. Vogel*, 533 N.E.2d 901, 905 (Ill. 1988) (citations omitted). Because plaintiffs have failed to allege Steele's fraud sufficiently, they cannot maintain a claim for unjust enrichment or a constructive trust. Count Eight is, therefore, dismissed.

## Conclusion

For the reasons set forth above, defendant's motion to dismiss [doc. no. 11] is granted. Counts One, Two, Three, Four and Eight are dismissed without prejudice and Counts Five, Six and Seven, are dismissed with prejudice. Plaintiffs have fourteen days from the date of this Order to file an amended complaint in accordance with it. If plaintiffs fail to do so in that time, the Court will dismiss the former group of counts with prejudice.